1
2
3
4
5
6
7

8      IN THE UNITED STATES DISTRICT COURT

9      FOR THE EASTERN DISTRICT OF CALIFORNIA

10   ISMAEL VIVEROS, JR.,

11                    Petitioner,              No. CIV S-09-CV-3107 MCE CHS P

12        vs.

13   MICHAEL MARTEL, WARDEN,

14                    Respondent.            FINDINGS AND RECOMMENDATIONS

15   _____/

16                              **1.  INTRODUCTION**

17              Petitioner, Ismael Viveros, Jr., is a state prisoner proceeding pro se with a petition

18   for writ of habeas corpus pursuant to 28 U.S.C. § 2254.   Petitioner is currently serving an

19   indeterminate term of life without the possibility of parole following his 2007 conviction by jury

20   trial in San Joaquin County Superior Court for first degree murder with a robbery special

21   circumstance, robbery, and illegal possession of a firearm.   In addition, the jury found various

22   firearm enhancements to be true.   After a bench trial, the court found various prior conviction

23   allegations to be true.   Here, Petitioner challenges the constitutionality of his convictions.

24   /////

25   /////

26   /////

                                              -1-

## II. CLAIMS

Petitioner presents several grounds for relief.  Specifically, the claims are as follow:

(1)     The trial court erred by denying his motion for judgment of acquittal because the evidence presented at trial during the prosecution's case in chief could support only a charge of extortion, not robbery.

(2)     The evidence presented at trial was insufficient to support the jury's special circumstance finding that he committed the murder in furtherance of a robbery.

(3)     The trial court erred by declining to instruct the jury on the relationship between circumstantial evidence and reasonable doubt, pursuant to CALCRIM 224.

(4)     The jury was improperly instructed on the robbery special circumstance because CALCRIM 730 is misleading and states an element as a defense not required to be proven by the prosecution.

(5)     The firearm discharge enhancements should be reduced from life terms to twenty years determinate terms because the judge erred in granting the prosecutions motion to amend the information after jury selection.

Petitioner's first and second grounds for relief both present sufficiency of evidence claims, and will be addressed together in section (V)(A), below.  Petitioner's third and fourth grounds for relief both present challenges to jury instructions and will thus be addressed together in section (V)(B).  Petitioner's fifth remaining ground for relief will be addressed individually in section (V)(C).  Based on a thorough review of the record and applicable law, it is recommended that each of Petitioner's claims be denied.

## III. BACKGROUND

The basic facts of Petitioner's crime were summarized in the unpublished opinion of the California Court of Appeal, Third Appellate District, as follow:

The eyewitness to the crimes was going to the victim's home to give an estimate for electrical work on the victim's garage.  Defendant asked to come along; the three men had been friends for 20 years. They drove over in the Chevy truck that belonged to the eyewitness. Defendant was somewhat irritated with the eyewitness because the latter owed him $700-800 for some rims, but the eyewitness was

unaware of any enmity between the victim and defendant, and did not have any reason to think defendant might want to harm the victim. When they arrived, the eyewitness did not see or hear anyone else at the victim's home. He hugged the victim in the doorway and went straight to the bathroom.

When the eyewitness returned from the bathroom, the victim and defendant had just finished snorting some "crystal meth" using a rolled $100 bill. The three went into the garage and drank some beer.[FN1] Defendant began to argue with the victim, accusing him of claiming to be pimping defendant's sister. He pulled out a gun, which the eyewitness recognized as a chrome .357 revolver. The victim exclaimed, "'It's like that? It's like that?'" Defendant then demanded drugs and money (the victim apparently owed him money for some drugs). The victim queried whether defendant needed money, claimed that he had only $500 available, then pulled cash out of his pocket and handed it to defendant.[FN2] Pocketing the money, defendant demanded drugs, but the victim slapped his pockets and denied having any more. Defendant told the victim, "'I got a lot of love for you Ruben, but you gots to go.'" He then shot him in the middle of the forehead. The eyewitness estimated that the gun was about a foot from the victim's head.

> FN1. The eyewitness had drank seven beers before defendant joined him.

> FN2. According to the eyewitness, it was five $100 bills folded

Defendant turned to the eyewitness and suggested that he should shoot the eyewitness as well. The eyewitness told him that he just wanted to get out of there, and walked out of the garage. Defendant followed and got into the truck. As they drove away, defendant told him, "That was a gan[g]ster hit. Ruben melted like butter." He kissed the eyewitness on his cheek and said, "Yeah, that mother fucker . . . , I will do a line for this mother fucker." The eyewitness drove defendant to his parents' home. He did not see the gun while they were driving, though the cab reeked of gunpowder. Defendant discarded the weapon at his parents' home, then the eyewitness drove defendant back to his car. The eyewitness reported the crime to his parole agent the next day.[FN3]

> FN3. The eyewitness admitted to several felony convictions, which included auto theft, assault, gun possession, and other offenses.

A detective testified about various inconsistencies between the statements of the eyewitness to the police and at trial. The defense also introduced inconsistencies from the testimony of the eyewitness at the preliminary hearing. None of these, however, contradicted his testimony that defendant displayed the gun and demanded the

victim's property before the victim offered him the money (his prior statement in fact being consistent with this account at trial).

Another long-time friend of the victim had been at his house earlier in the day, along with a drywaller[FN4] who was helping the victim fix up the house and who had a cot in one of the bedrooms closets in which he slept. The friend thought that the drywaller was "acting funny"; he had been drinking but not to the point where he would have fallen off the ladder he was using while sanding the ceiling. The friend left to bring gas to his stranded wife. At the time he left, the victim was chiding the drywaller for the slow pace of his work.[FN5] The friend called the victim from his truck to let him know someone was arriving at the house.

> FN4.   The eyewitness did not know this person.

> FN5.   At trial, the friend minimized the degree of the disagreement. He had told a police investigator, however, that it was a heated argument.

The friend returned about an hour later. The front door was open and a stereo was loudly blaring. He did not see the drywaller as he headed straight for the garage. He found the victim gasping for breath. He tried to tend to him, and called for assistance. Emergency personnel arrived and took the victim to the hospital at 7:15 p.m. The victim died and an autopsy was performed the next day. Blood tests showed that the victim was under the influence of methamphetamine at the time of the shooting.

The drywaller owned a white Chevy Blazer with a blue stripe on its side. It was not there when the eyewitness arrived or when the friend returned. In letting her cat in the house, a neighbor of the victim saw a white, blue-striped Blazer parked in front of the victim's house. After hearing what sounded like a gunshot, she heard what she believed was the Blazer drive off at a high rate of speed. A second neighbor was sitting in her idling car in the driveway waiting for her husband. It was about 6:40 p.m. She saw a man, who appeared jumpy, smoking outside the victim's house. He went inside. A few minutes later he rushed out of the house to an SUV that she thought was a Blazer, and drove off at a high rate of speed. Her car idled very loudly, so she could not hear anything before her husband joined her and they drove off. Yet another neighbor was smoking on her front porch when she saw a white and blue Blazer speed erratically down the street. The police and emergency personnel arrived at the victim's house within 10 minutes after the Blazer left.

The victim had a .380 semiautomatic firearm in the house for protection. The firearm belonged to the friend, and the friend had seen it a few days before. The drywaller had previously played around with it. Neither the friend nor the police were able to find it.

The friend directed the police to the home of the drywaller. The Blazer was not there when an officer checked at 7:38 p.m., but when another officer went by a couple of hours later, it was parked out front. When other officers came by the residence between 3:00 and 4:00 in the morning on a cold and foggy night, they found the drywaller hiding between the garage and the back fence.[FN6]

> FN6.   The police apparently did not take the drywaller into custody, and never evaluated gunshot residue samples they obtained from him. His parents testified that he left the country for Central America shortly before the trial, before the defense could serve him with a subpoena to appear as a witness.

The wound did not have any gunpowder residue near it. This means that a gun such as a .357 had to have fired at the victim from a distance of greater than three feet. The bullet in the head of the victim "was most likely fired from a revolver chambered for either the .38 Special or a .357 Magnum cartridge." The police did not find any casings, which was consistent with the use of a revolver but not a semiautomatic weapon. Two hundred fifty-four dollars in assorted currency was found underneath a bloody pair of jeans that appeared to be cut open (presumably by the paramedics). In one of the pockets was a baggie that contained over eight grams of methamphetamine.

The police arrested defendant the next day and searched his residence. They found a gun holster, a bag of ammunition of various calibers (one of which was a .357), and a .357 cartridge in a plastic bin outside the house. None of the bullets matched the bullet fragments retrieved from the victim's head.

Under police questioning, defendant's statement evolved over time, beginning with a denial of any interaction with the victim on that day (other than stopping by in the afternoon to pick up "crystal") and a claim that he and the eyewitness had been drinking beer in a park at the time of the shooting. At long last, defendant said he might as well admit shooting the victim because that was what everyone was apparently telling the police. He agreed that he had snorted a line with the victim in the kitchen and that he had been drinking beer in the garage. He agreed that he challenged the victim about making the untrue statements about his sister, and that the victim offered him money. But he claimed that at the crucial point he had gone blank while hearing a gunshot, at the same time insisting that neither he nor the eyewitness was the shooter or had a gun.

Lodged Doc. 8 at 2-8.

Following a jury trial, Petitioner was convicted of first degree murder occurring during the commission of a robbery, and second degree robbery. In addition, each conviction

1   carried a penalty enhancement for personal and use and intentional discharge of a firearm

2   proximately causing death.  The jury also convicted Petitioner of possession of a firearm by a felon.

3   Petitioner waived a jury trial and, following a bench trial, the judge found that Petitioner had

4   sustained two prior serious felony convictions.  He was sentenced to life in prison without the

5   possibility of parole for the murder conviction, a consecutive minimum term of 25 years on one of

6   the firearm enhancements, and a concurrent term of 25 years to life on the felon in possession

7   conviction.  Sentencing was stayed on the robbery conviction and its firearm enhancement.

8          Petitioner timely appealed his convictions to the California Court of Appeal, Third

9   Appellate District.  The court affirmed his convictions with a reasoned opinion on October 24, 2008.

10  Petitioner then filed a petition for review of the appellate court's decision in the California Supreme

11  Court.  The court denied the petition without comment on January 21, 2009.  Following the

12  exhaustion of his appellate remedies, Petitioner filed a petition for writ of habeas corpus in the

13  California Supreme Court.  The court denied the petition with citation to *In re Waltreus*, 62 Cal.2d

14  218 (1965) (any claim raised and rejected on appeal cannot be renewed in a petition for writ of

15  habeas corpus) and *In re Dixon*, 41 Cal.2d 756 (1953) (absent special circumstances, a writ of

16  habeas corpus will not lie where the claimed errors could have been, but were not, raised on direct

17  appeal).

18          Petitioner filed this federal petition for writ of habeas corpus on November 9, 2009.

19  Respondent filed its answer on August 31, 2010, and Petitioner did not file a traverse.

20              **IV.  APPLICABLE STANDARD OF HABEAS CORPUS REVIEW**

21          This case is governed by the provisions of the Antiterrorism and Effective Death

22  Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after

23  its enactment on April 24, 1996.  *Lindh v. Murphy*, 521 U.S. 320, 326 (1997); *Jeffries v. Wood*, 114

24  F.3d 1484, 1499 (9th Cir. 1997).  Under AEDPA, an application for a writ of habeas corpus by a

25  person in custody under a judgment of a state court may be granted only for violations of the

26  Constitution or laws of the United States.  28 U.S.C. § 2254(a); *Williams v. Taylor*, 529 U.S. 362,

375 n. 7 (2000).  Federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  Although "AEDPA does not require a federal habeas court to adopt any one methodology," there are certain principles which guide its application.  *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003)

First, AEDPA establishes a "highly deferential standard for evaluating state-court rulings."  *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002).  Accordingly, when determining whether the law applied to a particular claim by a state court was contrary to or an unreasonable application of "clearly established federal law," a federal court must review the last reasoned state court decision.  *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004); Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002).  Provided that the state court adjudicated petitioner's claims on the merits, its decision is entitled to deference, no matter how brief.  *Lockyer*, 538 U.S. at 76; *Downs v. Hoyt*, 232 F.3d 1031, 1035 (9th Cir. 2000).  Conversely, when it is clear that a state court has not reached the merits of a petitioner's claim, or has denied the claim on procedural grounds, AEDPA's deferential standard does not apply and a federal court must review the claim de novo.  *Nulph v. Cook*, 333 F.3d 1052, 1056 (9th Cir. 2003); *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002).

Second, "AEDPA's, 'clearly established Federal law' requirement limits the area of law on which a habeas court may rely to those constitutional principles enunciated in U.S. Supreme Court decisions."  *Robinson*, 360 F.3d at 155-56 (citing *Williams*, 529 U.S. at 381).  In other words, "clearly established Federal law" will be " the governing legal principle or principles set forth by [the U.S. Supreme] Court at the time a state court renders its decision."  *Lockyer*, 538 U.S. at 64. It is appropriate, however, to examine lower court decisions when determining what law has been

1  "clearly established" by the Supreme Court and the reasonableness of a particular application of that

2  law. *See Duhaime v. Ducharme*, 200 F.3d 597, 598 (9th Cir. 2000).

3  Third, the "contrary to" and "unreasonable application" clauses of § 2254(d)(1) have

4  "independent meanings." *Bell v. Cone*, 535 U.S. 685, 694 (2002).  Under the "contrary to" clause,

5  a federal court may grant a writ of habeas corpus only if the state court arrives at a conclusion

6  opposite to that reached by the Supreme Court on a question of law, or if the state court decides the

7  case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams*,

8  529 U.S. at 405.  It is not necessary for the state court to cite or even to be aware of the controlling

9  federal authorities "so long as neither the reasoning nor the result of the state-court decision

10  contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002).  Moreover, a state court opinion need not

11  contain "a formulary statement" of federal law, but the fair import of its conclusion must be

12  consistent with federal law. *Id*.

13  Under the "unreasonable application" clause, the court may grant relief "if the state

14  court correctly identifies the governing legal principle...but unreasonably applies it to the facts of

15  the particular case." *Bell*, 535 U.S. at 694.  As the Supreme Court has emphasized, a court may not

16  issue the writ "simply because that court concludes in its independent judgment that the relevant

17  state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*,

18  529 U.S. at 410.  Thus, the focus is on "whether the state court's application of clearly established

19  federal law is *objectively* unreasonable." *Bell*, 535 U.S. at 694 (emphasis added).

20  Finally, the petitioner bears the burden of demonstrating that the state court's

21  decision was either contrary to or an unreasonable application of federal law. *Woodford*, 537 U.S.

22  at 24 ; *Baylor v. Estelle*, 94 F.3d 1321, 1325 (9th Cir. 1996).

23  **V.  DISCUSSION**

24  **A.    SUFFICIENCY OF EVIDENCE (Petitioner's Claims One and Two)**

25  Petitioner claims that the trial court erred in denying his motion for judgment of

26  acquittal because the evidence presented at trial was insufficient to support the robbery charge.  In

a separate claim, Petitioner alleges that the evidence presented at trial was insufficient to support the jury's special circumstance finding that he committed the murder in furtherance of the robbery.

The Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970).  On habeas corpus review, the court must determine "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979).  In applying this standard, the reviewing court refers to the substantive elements of the criminal offense as defined by state law.  *See id*. at 324 n.16.  Sufficient evidence supports a conviction so long as, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).   "[A] reviewing court may not ask itself whether *it* believes that the evidence at trial established guilt beyond a reasonable doubt, only whether *any* rational trier of fact could have made that finding." *U.S. v. Nevils*, 598 F.3d 1158, 1164 (9th Cir. 2010) (internal quotations omitted) (emphasis in original); *Roehler v. Borg*, 945 F.2d 303, 306 (9th Cir. 1991) ("The question is not whether we are personally convinced beyond a reasonable doubt.  It is whether rational jurors could reach the conclusion these jurors reached.").  Reversal of a conviction is required only "if the evidence of innocence, or lack of evidence of guilt, is such that all rational fact finders would have to conclude that the evidence of guilt fails to establish every element of the crime beyond a reasonable doubt." *Id*.

"A petitioner for a federal writ of habeas corpus faces a heavy burden when challenging the sufficiency of the evidence used to obtain a state conviction on federal due process grounds." *Juan H. V. Allen*, 408 F.3d 1262, 1274 (9th Cir. 2005).  As noted above, all evidence must be considered in the light most favorable to the prosecution. *Jackson*, 443 U.S. at 319.  The prosecution is not required to "rule out every hypothesis except that of guilt," and the reviewing court, "when faced with a record of historical facts that supports conflicting inferences, must

1   presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any

2   such conflicts in favor of the prosecution, and must defer to that resolution." *Wright v. West*, 505

3   U.S. 277, 296-97 (1992) (internal citations omitted). *See also Nevils*, 598 F.3d at 1164.  This is so

4   because it is the province of the jury to "resolve conflicts in testimony, to weigh evidence, and to

5   draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319.  *See also*

6   *Schlup v. Delo*, 513 U.S. 298, 330 (1995) ("[U]nder *Jackson*, the assessment of the credibility of

7   witnesses is generally beyond the scope of review."); *Bruce v. Terhune*, 376 F.3d 950, 957 (9th Cir.

8   2004) ("A jury's credibility determinations are therefore entitled to near-total deference under

9   *Jackson*.").  Thus, a reviewing court "may not usurp the role of the finder of fact by considering how

10  it would have resolved the conflicts, made the inferences, or considered the evidence at trial."

11  *Nevils*, 598 U.S. at 1164 (citing *Jackson*, 443 U.S. at 318-319).

12  **1.   DENIAL OF MOTION FOR JUDGMENT OF ACQUITTAL**

13          At the end of the prosecution's case-in-chief, Petitioner moved for a judgment of

14  acquittal, pursuant to CAL. PENAL § 1118.1, on the ground that the evidence presented was

15  insufficient to sustain a jury finding that he was guilty beyond a reasonable doubt of robbery.

16  According to Petitioner, while the evidence presented may have been sufficient to prove he had

17  committed extortion, the prosecution had failed to present substantial evidence that he obtained

18  money from the victim without his consent, an essential element of robbery.  Petitioner argues that

19  the victim willingly gave him money as partial repayment of a debt, thus negating the element of

20  robbery requiring that property be taken against the victim's will.  Based on his contention that

21  insufficient evidence supported the robbery charge, Petitioner also challenged the sufficiency of

22  evidence in support of the prosecution's felony-murder theory of the case, which was based upon

23  the robbery charge, as well as the robbery-murder special circumstance.  The trial court found the

24  evidence sufficient to proceed to the jury and denied the motion.

25          Petitioner now contends that the trial court improperly denied his motion for

26  judgment of acquittal.  He argues that the evidence does not demonstrate that he pointed a gun at

the victim in order to obtain money or drugs from him.  Rather, he claims that he pointed the gun at the victim because he was angered by the his alleged claim to be "pimping out" Petitioner's sister. According to Petitioner, the victim then offered him money in a consensual act intended to divert his anger and to placate him by paying back a debt.  He argues that the act "expressed willingness and recognition that [Petitioner] should have [the money]."  Petitioner states that he willingly accepted the money, however "it did not divert his anger and certainly did not assuage his honor." Petitioner thus claims that money was obtained with the victim's consent and, according to him, there is no evidence in the record to suggest otherwise.  In addition, Petitioner contends that the testimony at trial of Rick Munoz, who was the only eyewitness to the robbery and murder, was not credible.

The California Court of Appeal, Third Appellate District, considered and rejected Petitioner's claim on direct appeal, explaining as follows:

> Renewing a basis of his motion for acquittal (§ 1118.1), defendant contends that the prosecution's evidence proved only extortion, not robbery.  Therefore, the trial court should have dismissed the charge of robbery and the robbery-murder special circumstance, and precluded the prosecution from proceeding on a felony-murder theory in connection with the homicide charge.[FN8]
>
> > FN8.   He also contested the sufficiency of a conviction for first degree murder on a theory of premeditation, but does not renew this claim on appeal.  He instead contends it was not "likely" that the murder verdict is based on a theory of premeditation so that conviction must be reversed as well.  This is not the correct standard, and it is questionable whether the robbery verdict and the special-circumstance finding constitute of themselves the necessary *affirmative showing* that the jury based the murder verdict on a factually insufficient theory.  (*People v. Guiton* (1993) 4 Cal.4th 1116, 1129; cf. *People v. Rundle* (2008) 43 Cal.4th 76, 140-141 (*Rundle*).)  In any event, as we find sufficient evidence of a taking against the will of the victim, the point is moot.
>
> Robbery and extortion differ in that the latter requires the use of force or fear with the specific intent to acquire property of another with the other's "consent" (2 Witkin & Epstein, Cal. Criminal Law (3d ed. 2000) Crimes Against Property, § 103, p. 136),[FN9] whereas robbery

requires proof of a taking *against* the victim's will (*id.*, § 86, p. 115; *People v. Kozlowski* (2002) 96 Cal.App.4th 853, 866), as well as other distinctions not material here (*People v. Torres* (1995) 33 Cal.App.4th 37, 50 [extortion does not require either intent to deprive victim permanently of property or taking from victim's person or immediate presence]; 2 Witkin & Epstein, Cal. Criminal Law, *supra*, § 104(2), p. 137 [extortion defines "property" broadly]). Another distinction is that traditionally the use of force in extortion consists of some future threat rather than an immediate threat. (*Torres, supra,* 33 Cal.App.4th at p. 52, fn. 7.)[FN10]

> FN9. This paradoxical "consent" is an apparent willingness that is in fact only the result of a desire to forestall "some personal calamity or injury." (*People v. Peck* (1919) 43 Cal.App. 638, 645 (*Peck*).)

> FN10. The parties dispute whether *Peck*, a vintage decision of this court, compels a finding that defendant committed only extortion and not robbery. In the first place, the decision involves the converse claim that the events proved robbery rather than extortion. (43 Cal.App. at p. 642.) We simply concluded there was substantial evidence to support an implied finding that the taking was with the victim's consent. (*Id.* at p. 644.) The case does not deviate from the black-letter distinction between the crimes, and its holding only represents a fact-specific application of the settled law to a different (albeit colorful) set of circumstances, which does not as a result control the outcome in the present case. (*Robison v. City of Manteca* (2000) 78 Cal.App.4th 452, 458, fn.5.)

Defendant premises his argument on an interpretation of the facts in which the victim offered defendant money after the display of the gun but before any demand for the victim's property, contending that defendant at that point was merely seeking to vindicate family honor. Although this does reflect the initial chronology in his testimony, the eyewitness then agreed that he had told a detective on the next day that defendant had *first* demanded that the victim "'give me the money that you owe me'" and "'the dope you got,'" and the detective also later testified that the eyewitness had told him on that occasion that defendant first demanded money and drugs ("'some fucking shit'"), then displayed the gun, and then the victim offered cash. Under these circumstances, the "offer" of the cash at gunpoint after a demand for it is quintessential robbery, not mere extortion.

Lodged Doc 8 at 10-12.

A criminal defendant may move for a judgment of acquittal under section 1118.1 of

the California Penal Code "at the close of evidence on either side and before the case is submitted

-12-

to jury for decision . . . if the evidence then before the court is insufficient to sustain a conviction of such offense or offenses on appeal."  To the extent that Petitioner's claim is premised on an alleged error in the interpretation or application of the California Penal Code, however, it is not cognizable for federal habeas corpus relief.  *See* 28 U.S.C. § 2254(a); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state law questions.").  Thus, the trial court's denial of Petitioner's motion to acquit can be challenged only insofar as he claims that his federal right to due process of law was violated because there was insufficient evidence to support his conviction for robbery.

Sufficiency of the evidence claims are judged by "the substantive elements of the criminal offense as defined by state law."  *Jackson*, 443 U.S. at 324 n.16.  Under California law, "[t]he elements of robbery are (1) the victim had possession of property of some value, (2) the property was taken from the victim or his or her personal presence, (3) the property was taken against the will of the victim, (4) the taking was either by force or fear, and (5) the property was taken with the specific intent to permanently deprive the victim of the property."  *People v. Magee*, 107 Cal.App.4th 188, 195 n.4 (2003) (citing CALJIC No. 9.40); CAL. PENAL CODE § 211.

The state appellate court's determination that Petitioner's claim should be rejected is a reasonable construction of the evidence in this case and is not contrary to or an objectively unreasonable application of clearly established federal law.  *See Woodford v. Visciotti*, 537 U.S. 19, 25 (2002); 28 U.S.C. § 2254(d)(1).  Viewing the evidence in the light most favorable to the prosecution, and for the reasons described by the California Court of Appeal, it is apparent that there was sufficient evidence from which a rational trier of fact could have found beyond a reasonable doubt that Petitioner was guilty of the robbery charge.  This is not such a case where *all* fact finders would be forced to conclude that the evidence presented fail to establish every element of the crime or robbery beyond a reasonable doubt.  *See Nevils*, 598 F.3d at 1164.  That Petitioner can construct from the evidence alternative scenarios which he claims are at odds with the verdict does not mean that the evidence was insufficient to support his conviction.  A reviewing court is not permitted, as

-13-

it appears Petitioner would have this court do, to re-weigh evidence, draw its own independent inferences from the evidence, or substitute its own witness credibility determination for that of the jury. Indeed, to the extend that Petitioner's claim challenges the credibility of a witness, it is beyond the scope of federal habeas corpus review. *Schlup*, 513 U.S. at 330. Accordingly, Petitioner is not entitled to habeas corpus relief on his claim that the evidence introduced at his trial was insufficient to support his robbery conviction.

## 2.   SPECIAL CIRCUMSTANCE FINDING

Petitioner claims that insufficient evidence supported the jury's special circumstance finding that he committed murder in furtherance of the robbery because his primary goal was to kill, not to steal. Petitioner argues that the robbery was merely incidental to the murder, which he committed to protect his family's honor. The California Court of Appeal, Third Appellate District, considered and rejected Petitioner's claim on direct appeal, explaining as follows:

> Defendant also contends that, even if the jury had proper guidance from the instruction on the special circumstance, the finding is not supported by substantial evidence. We disagree.
>
> Defendant simply draws alternative inferences regarding his purposes at the time of the shooting, insisting that the evidence shows that he anticipated receiving additional money from the victim and therefore could not have wanted to kill the victim with this debt outstanding to further an independent goal of robbery; rather, the robbery was merely incidental to his goal of protecting family honor. However, it is equally proper to conclude that defendant, already in a foul mood because the eyewitness had an outstanding debt as well, had lost patience with the victim and wanted to collect what he could and then killed him before retreating to a place of temporary safety because of the resentment about the debt and the bad-mouthing. Consequently, there was an adequate basis for the special circumstance.

Lodged Doc. 8 at 16-17.

Under California law, if the elements of robbery are proven, the robbery may attach as a "special circumstance" to a murder if the murder was committed while the defendant was "engaged in, or was an accomplice in, the commission of, attempted commission of, or the immediate flight after committing or attempting to commit . . . [r]obbery in violation of Section 211

-14-

1   . . . ." Cal. Penal Code § 190.2(a)(17)(A).  With regard to the special circumstance, Petitioner's jury

2   was instructed that "in order for this special circumstance to be true, the People must prove that the

3   defendant intended to commit Robbery independent of the killing.  If you find that the defendant

4   only intended to commit Murder and the commission of Robbery was incidental to the commission

5   of that Murder, then the special circumstance has not been proved."  CT at 316.  The jury rejected

6   the defense theory that the robbery was incidental to the murder and concluded, based on the

7   evidence introduced at trial, that the murder was committed, at least in part, "to advance [the]

8   independent felonious purpose of robbery."  *People v. Lewis*, 43 Cal.4th  415, 464-65 (2008)

9   (internal quotations omitted).

10          The state appellate court's determination that sufficient evidence supported the jury's

11   special circumstance finding was not contrary to or an unreasonable application of clearly

12   established federal law.  As discussed in the previous subsection, sufficient evidence in the record

13   supports Petitioner's conviction for robbery under section 211 of the California Penal Code.  Once

14   again, that Petitioner can construct from the evidence alternative scenarios which he claims are at

15   odds with the special circumstance finding does not mean that evidence was insufficient to support

16   the jury's verdict.  The overall record in Petitioner's trial, viewed in the light most favorable to the

17   prosecution, reveals that there was sufficient evidence in the record from which a rational jury could

18   reasonably conclude that Petitioner killed the victim because he wanted to collect on his debt to him.

19   Indeed, a rational jury could also have concluded that Petitioner killed the victim to collect on the

20   debt *and* because he was angered by the victim's statements about his sister. Petitioner has failed

21   to demonstrate that he is entitled to federal habeas corpus relief on this claim.

22   **B.      JURY INSTRUCTIONS (Petitioner's Claims Three and Four)**

23          Petitioner alleges two grounds for relief based on instructional error.  Petitioner

24   contends that the trial court erred by declining to instruct the jury, pursuant to CALCRIM 224, on

25   the relationship between circumstantial evidence and reasonable doubt.  Petitioner also claims that

26   the trial court improperly instructed the jury regarding the robbery special circumstance using

CALCRIM 730, which he argues is misleading and improperly shifts the burden of proof from the prosecution to the defense.

A claim of instructional error does not raise a cognizable federal claim unless the error, considered in the context of all the instructions and the trial record as a whole, "so infected the entire trial that the resulting conviction violates due process." *Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991); *Henderson v. Kibbe*, 431 U.S. 145, 152-55 n.10 (1977); *Cupp v. Naughten*, 414 U.S. 141, 146-47 (1973).  In addition, on federal habeas corpus review, no relief can be granted without a showing that the instructional error had a "substantial and injurious effect or influence in determining the jury's verdict."  *Calderon v. Coleman*, 525 U.S. 141, 147 (1998) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)).

**1.      CALCRIM 224**

At trial the jury was instructed, pursuant to CALCRIM No. 225, regarding the proper way to evaluate the use of circumstantial evidence as it specifically related to prove Petitioner's specific intent or mental state.  The trial court denied Petitioner's multiple requests to instruct the jury regarding the proper way to evaluate circumstantial evidence generally, pursuant to CALCRIM No. 224, explaining that California state law required giving the more general instruction only where the prosecution's case as a whole rested substantially on circumstantial evidence instead of direct evidence.  The court reasoned Petitioner's intent or mental states was the only element of the offense that rested substantially on circumstantial evidence, thus the more tailored instruction was appropriate.  Petitioner now claims that the trial court's refusal to instruct the jury pursuant to CALCRIM 224 was error.  The California Court of Appeal, Third Appellate District, considered and rejected Petitioner's claim on direct appeal, explaining as follows:

> On several occasions, defense counsel attempted to persuade the trial court to include an instruction on the sufficiency of circumstantial evidence.[FN12] The court noted that the People's case rested on direct evidence except for proof of the mental state of the defendant, which was the subject of another of the instructions that the court intended to use.[FN13] Defense counsel, however, felt he was entitled to the instruction because there was circumstantial evidence that

-16-

contradicted the direct evidence in the testimony of the eyewitness. The trial court refused the request.

> FN12. The requested instruction provided, in relevant part, "Before you may rely on circumstantial evidence to conclude that a fact necessary [for conviction] has been proved, you must be convinced that the People have proved each fact essential to the conclusion beyond a reasonable doubt. [¶] Also, before you may rely on circumstantial evidence to find the defendant guilty, you must be convinced that the only reasonable conclusion supported by the circumstantial evidence is that the defendant is guilty.  If you can draw two or more reasonable conclusions from the circumstantial evidence, and one of those . . . points to innocence and another to guilt, you must accept the one that points to innocence."

> FN13. The court instructed the jury that "In order to prove the crime[s] charged . . . , the . . . special circumstance . . . , that the defendant did the acts charged, but also that he acted with a particular intent or mental state. [¶] An intent or mental state may be proved by circumstantial evidence.  [¶] Before you rely on circumstantial evidence to conclude that a fact necessary to a verdict of guilty . . . or [a] finding that the . . . special circumstance allegation is true, you must be convinced that the People have proved each fact essential to that conclusion beyond a reasonable doubt. [¶] Also, before you may rely on circumstantial evidence to conclude that the defendant had the required intent or mental state, you must be convinced that the only reasonable conclusion supported by the circumstantial evidence is that the defendant had the required intent or mental state.  If you can draw two or more reasonable conclusions from the circumstantial evidence, [and] one of those reasonable conclusions supports a finding that the defendant did have the required intent or mental state, and another . . . supports a finding that [he] did not, you must conclude that the required intent or mental state was not proved by the circumstantial evidence."

Defendant contends on appeal that the court's premise was incorrect because the prosecution relied on circumstantial evidence to corroborate the eyewitness in his closing argument.  Defendant fails to demonstrate as to any essential element of any conviction or finding that circumstantial evidence was necessary to fill in *substantial* gaps in the proof otherwise provided in the eyewitness testimony.[FN14]  "[W]e have consistently held that [the analogous former pattern instruction] is not necessary unless the prosecution

*substantially relies* on circumstantial evidence to prove its case." (*People v. Anderson* (2001) 25 Cal.4th 543, 582, italics added.) In *Anderson*, an eyewitness provided proof of an unadjudicated murder to support an aggravating penalty factor (*id*. at pp. 559, 561-563, 570); there were significant problems with her credibility, including her beliefs in recollection via dreams and in telepathic communication, and her account of giving birth to imaginary triplets who later died (*id*. at p. 563). "[T]he People relied primarily upon direct evidence, i.e., the eyewitness testimony . . . , to prove that defendant committed the [unadjudicated] murder . . . . [B]y introducing circumstantial evidence *merely to corroborate* an eyewitness, the prosecution *did not* substantially rely on such evidence." (*Id*. at p. 582, italics added; accord, *People v. Brown* (2003) 31 Cal.4th 518, 525-528, 562, 563-564 [describing eyewitness testimony of charged and other crimes as being "primary" and circumstantial evidence as being only "incidental" to it]; 5 Witkin & Epstein, Cal. Criminal Law, *supra*, Criminal Trial, § 652, p. 940 [noting in addition that extrajudicial admissions, even if deemed circumstantial, are not the type of evidence requiring instructions on their use].) We therefore conclude that the trial court did not err in refusing to use the more general instruction on circumstantial evidence.[FN15]

> FN14.  The eyewitness testimony is also sufficient to refute the defendant's claim of third party culpability.

> FN15.  In any event, defense counsel in closing argument informed the jury without contradiction that the principles for using circumstantial evidence in connection with the issue of mental state or intent can apply to *any* facts for which the prosecution relies on circumstantial evidence.

Lodged Doc. 8 at 17-21.

"Normally jury instructions in State trials are matters of State law." *Hallowell v. Keve*, 555 F.2d 103, 106 (3rd Cir. 1977) (citation omitted); *see also Williams v. Calderon*, 52 F.3d 1465, 1480-81 (9th Cir. 1995).  Federal courts are bound by a state appellate court's determination that a jury instruction was not warranted under state law.  *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (per curiam) (noting that the Supreme Court has repeatedly held that "a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.").  An instructional error, therefore, "does not alone raise a ground cognizable in a federal habeas proceeding." *Dunckhurst v. Deeds*, 859 F.2d 110, 114

-18-

1   (9th Cir. 1988) (citation omitted); *see also Van Pilon v. Reed,* 799 F.2d 1332, 1342 (9th Cir. 1986)

2   (claims that merely challenge correctness of jury instructions under state law cannot reasonably be

3   construed to allege a deprivation of federal rights) (citation omitted).

4         Petitioner could still be entitled to habeas corpus relief if he could establish that the

5   state court violated his due process rights by omitting the jury instruction if the alleged error so

6   infected the entire trial that the resulting conviction violated due process. *Henderson,* 431 U.S. at

7   155; *Menendez v. Terhune,* 422 F.3d 1012, 1029 (9th Cir. 2005). Federal habeas corpus relief is not

8   warranted, however, unless he demonstrates that the alleged error had a "substantial and injurious

9   effect in determining the jury's verdict." *Brecht*, 507 U.S. at 623. In other words, Petitioner must

10  prove that, had the requested instruction been given, there is a "reasonable probability" that the jury

11  would have reached a different verdict. *Clark v. Brown,* 450 F.3d 898, 916 (9th Cir. 2006). In the

12  context of his  allegation that the trial court failed to give a jury instruction, Petitioner's burden is

13  "especially heavy," because "[a]n omission, or an incomplete instruction, is less likely to be

14  prejudicial than a misstatement of the law." *Henderson,* 431 U.S. at 155.

15        Under this demanding standard, Petitioner has failed to establish that he is entitled

16  to relief. The trial court's omission of the requested instruction did not render Petitioner's trial

17  fundamentally unfair in violation of due process. Both the state trial and appellate courts explained

18  that, under California state law, CALCRIM No. 225 was the proper circumstantial evidence

19  instruction to give in this case because  Petitioner's intent or mental states was the only element of

20  the offense that rested substantially on circumstantial evidence**.** A federal court conducting habeas

21  corpus review must presume "that state courts know and follow the law, and we have been instructed

22  that state-court decisions be given the benefit of the doubt." *Musladin v. Lamarque,* 555 F.3d 830,

23  838 n.6 (9th Cir. 2009) (internal quotations omitted). The state courts' decisions appear to be fully

24  supported by the record. In any event, even if there was error, it did not have a substantial or

25  injurious effect in determining the jury's verdict. *Brecht*, 507 U.S. at 637. The instructions given

26  at trial did not allow the jury to convict him without finding that the prosecution had proven beyond

a reasonable doubt all elements of each offense.  Petitioner is not entitled to federal habeas corpus relief on this claim.

**2.     CALCRIM 730**

Petitioner claims that the trial court erroneously issued a jury instruction, pursuant to CALCRIM No. 730, on the robbery murder special circumstance.  According to Petitioner, the challenged instruction deprived him of his right to due process because it was vague, misleading, and improperly shifted the burden of proof away from the prosecution.  The California Court of Appeal, Third Appellate District, considered and rejected Petitioner's claim on direct appeal, explaining as follows:

> In connection with the special circumstance, the court instructed the jury that "If you find the defendant guilty of first degree murder you must also decide if the People have proved that the special circumstance allegation is true.  [¶] The People have the burden of proving the special circumstance allegation beyond a reasonable doubt.  If the People have not met this burden[,] you must find the special circumstance has not been proved. [¶] . . . [¶] To prove that this special circumstance is true the People must prove [a number of elements, including that t]he act causing the death and the robbery were part of one continuous transaction.  [¶] . . . [¶] In addition, in order for this special circumstance to be true, the People must prove that the defendant intended to commit robbery independent of the killing.  If you find that the defendant [intended only] to commit murder and the commission of the robbery was incidental to the commission of that murder, then the special circumstance has not been proved."

> Though one might consider this instruction to be relatively straightforward, defendant disagrees.  His challenge to the instruction is not a model of clarity.  As best we can discern, he seems to contend that the instruction is erroneous because it is inadequate merely to find an independent objective of robbery; the jury must also find that the killing furthered the robbery in some fashion in order for it to have occurred in the robbery's commission, citing *People v. Jennings* (1988) 46 Cal.3d 963, 979.  He also seems to discern an improper shifting to him of the burden of proof on the issue of the incidental nature of the robbery in order to refute the allegation.

> We first reject the People's contention that the defendant has forfeited this issue on appeal because he did not object to the instruction on this ground in the trial court.  A defendant may challenge the legal adequacy of an instruction--even *without* a contemporaneous objection--under the guise of claiming that it

-20-

affected his substantial rights.  (*People v. Coffman and Marlow* (2004) 34 Cal.4th 1, 103, fn. 34, and cases cited therein; *People v. Smithey* (1999) 20 cal.4th 936, 976 f. 7;  § 1259.)

The standard by which we gauge defendant's arguments is whether there is a substantial likelihood that a *reasonable* juror would have interpreted the instruction in the manner defendant posits.  (*Boyde v. California* (1990) 494 U.S. 370, 378, 380 [108 L.Ed.2d 316]; *People v. Catlin* (2001) 26 Cal.4th 81, 151.)

*People v. Horning* (2004) 34 Cal.4th 871 stated that the proper interpretation of the felony-murder special circumstance is to require proof that a defendant had a purpose in committing the felony independent of the killing, "'that is, the commission of the felony was not merely incidental to an intended murder.'" (*Id*. at p. 907.) *Horning* stated that it is adequate to instruct a jury that the felony cannot be merely incidental to the commission of an intended murder without any additional explicit instruction that the murder must be committed to further the felony. (*Ibid*.)  "[W]e have never suggested that . . . any precise language was required to explain the concept to the jury," or that there is anything "magical about the phrase 'to carry out or advance' the felony." (*Id*. at p. 908.)  In short, "the court's explanation that the [felony] must not be 'merely incidental to the commission of the murder' adequately conveyed the requirement." (*Ibid*.)  The present instruction is equivalent to the instruction in *Horning*, and we do not find a substantial likelihood that a reasonable juror would fail to understand the concept it intends to convey.[FN11] (Accord, *Rundle, supra*, 43 Cal.4th at p. 156.)  Defendant is incorrect in attempting to distinguish this holding in *Horning* as being limited to a determination of the sufficiency of the evidence (which is instead a basis for the alternate holding rejecting the instructional argument. (*Horning, supra*, 34 Cal.4th at p. 908.)

> FN11. Defendant briefly noted in his opening brief a vagueness problem in the instruction's employment of the terms "independent" and incidental."  For the first time in his reply brief, he builds on this contention with the claim that the instruction lacked an adequate explanation of the necessity to find a logical connection other than temporal simultaneity between a robbery and a killing.  Assuming this contention is not barred under the restriction on "sniper" arguments appearing in a reply brief (*Beane v. Paulsen* (1993) 21 Cal.App.4th 89, 93, fn. 4), it flounders for the same reason as his primary argument: *Horning* states that *any* additional principles are unnecessary beyond the explanation that the robbery cannot be incidental, this being sufficient to explain that a murder cannot be a defendant's primary objective for the special circumstance to apply.

As for his contention that the instruction somehow puts the burden of proof on him to establish that the robbery was only incidental to the killing in order to refute the allegation, it fails to acknowledge the commonplace meaning of the instruction as a whole. The instruction explicitly iterates that the burden is on the prosecution to prove beyond a reasonable doubt that the robbery and the death were part of a continuous course of events in which there had been an independent purpose to commit robbery. The "finding" that the robbery was merely incidental is nothing more than the flip side of the prosecutorial coin, the alternate state of circumstances if the prosecution fails to convince the jury of an independent purpose. We reject this claim as well.

In his opening brief, defendant noted the constitutional basis for the requirement of an independent felonious purpose in order to sustain a special circumstance qualifying a defendant for the penalty of death. The people discerned this to be a claim that the instruction is constitutionally infirm because it does not adequately distinguish between the general class of murders and those that qualify for the death penalty. In defendant's reply brief, he states only that "The United States Supreme Court holdings appear to cover this issue," failing to tell us whether he cited them merely as background or to invoke the rule. Unlike the People, we do not find any constitutional claim to be adequately identified or argued, which absolves us of any duty to respond to it. (*Imagistics Internat., Inc. v. Department of General Services* (2007) 150 Cal.App.4th 581, 592, fn. 8.) In any event, the prosecution did not seek the death penalty, obviating the penalty-phase trial. Under these circumstances, we do not need to consider whether the instruction adequately qualifies the defendant for death. (*People v. Rodriguez* (1998) 66 Cal.App.4th 157, 165-166.)

Lodged Doc. 8 at 12-16.

In order to warrant federal habeas corpus relief, a challenged jury instruction "cannot be merely 'undesirable, erroneous, or even "universally condemned.,"' but must violate some due process right guaranteed by the fourteenth amendment." *Prantil v. California*, 843 F.2d 314, 317 (9th Cir. 1988) (quoting *Cupp v. Naughten*, 414 U.S. 141, 146 (1973). Once again, in order to prevail, a petitioner must demonstrate that the erroneously given instruction "'so infected the entire trial that the resulting conviction violates due process.'" *Estelle*, 502 U.S. at 72 (quoting *Cupp*, 414 U.S. at 147). In reviewing an allegedly ambiguous instruction, the court "must inquire 'whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way' that violates the Constitution." *Estelle*, 502 U.S. at 72 (quoting *Boyde v. California*, 494 U.S. 370, 380)

-22-

(1990)).  This determination is made after the reviewing court evaluates the challenged jury instruction "'in the context of the overall charge to the jury as a component of the entire trial process.'"  *Prantil*, 843 F.2d at 817 (quoting *Bashor v. Risely*, 730 F.2d 1228, 1239 (9th Cir. 1984).

Here, the state appellate court concluded that there was no error of state law in the modified version of CALCRIM No. 730 used to instruct the jury at Petitioner's trial.  More specifically, the state court determined that there was no substantial likelihood that a reasonable juror would fail to understand the concepts that the instruction intended to convey, that the commission of the robbery could not be merely incidental to the murder, and that the prosecution bore the burden of demonstrating beyond a reasonable doubt that the robbery and the murder were part of a continuous course of events in which Petitioner had an independent intent to commit robbery.  The state court's decision is not contrary to or an unreasonable application of clearly established federal law.  Reviewing the instructions given at Petitioner's trial in their entirety, there is no likelihood that the jury misunderstood the government's burden of proof or that the jury failed to understand the challenged instruction as given.  Petitioner is not entitled to federal habeas corpus relief on this claim.

## C.    FIREARM ENHANCEMENTS (Petitioner's Claim Five)

Petitioner claims that his right to due process was violated when the trial court permitted the prosecution to amend the information by adding firearm enhancements, pursuant to section 12022.53(d) of the California Penal Code, to the murder and robbery charges after the jury was selected and jeopardy had attached.  According to Petitioner, he suffered prejudice as a result of the amendment because he became subject to increased punishment.  The California Court of Appeal, Third Appellate District, considered and rejected Petitioner's claim on direct appeal, explaining as follows:

> The information alleged defendant's personal use and discharge of a firearm "within the meaning" of Penal Code section 12022.53, subdivisions (b) and (c) (subsequent undesignated section references will be to this code), which respectively provide for enhancements of 10 and 20 years.  At the outset of trial, the prosecution moved to

amend the allegation to plead subdivision (d) instead (which imposes a minimum indeterminate life sentence of 25 years as an enhancement for a death resulting from personal discharge of a firearm), and to make explicit that it applied to both the charge of murder and of robbery because "it was clear at the preliminary examination and all the way through, that . . . there was a gun involved and that death did result." Defense counsel objected that this subjected his client to greater punishment, but could not identify any prejudice. The trial court found that the defense had notice of all the facts necessary for the new enhancement, and could not posit any prejudice to the defense strategy, so it granted the motion. At this point, the first witness had yet to testify.

Defendant invokes the doctrine of "vindictive prosecution" in claiming that the prosecution should not have been permitted to amend the information to increase the severity of the punishment after the empanelment of the jury. He cites the principal cases applying the doctrine (*In re Bower* (1985) 38 Cal.3d 865, 871, 873-876 [refusal to renew stipulation to lesser degree of murder *on retrial after mistrial*]; *Twiggs v. Superior Court* (1983) 34 Cal.3d 360, 364-365, 368-374 [addition of several recidivist allegations in *new trial after mistrial*]),[FN7] which based their analysis on United States Supreme Court authority requiring prosecutors to rebut a presumption of vindictiveness in increasing the severity of the charges *on retrial after a successful appeal* or *after requesting a trial de novo* (thought not *before* jeopardy attaches). (*Bower, supra,* 38 Cal.3d at pp. 873-874.)

> FN7. He also cites cases involving the inapposite prohibition against convicting a defendant or juvenile of an offense not included in the pleadings or the statutory definition of the charged offense. (*In re Robert G.* (1982) 31 Cal.3d 437; *People v. Lohbauer* (1981) 29 Cal.3d 364; *In re Johnny R.* (1995) 33 Cal.App.4th 1579.)

This doctrine has no place in the context of the present case. While jeopardy may have attached, the amendment of the information was not in response to defendant's exercise of *any* right, which is the purpose of the protections that the doctrine affords.

Defendant otherwise does not demonstrate any lack of notice in connection with the amendment, remarking instead that notice and an opportunity to defend effectively against the new enhancement are not the only considerations. Rather, he simply speculates that the pretrial plea negotiation process could have taken a different course if this significant increase in the potential punishment had been part of the consideration. However, speculation is not a basis for reversing a court's exercise of its discretion in ruling on a motion to amend the pleadings, which "is broad and is almost invariably upheld." (*People v. Superior Court* (*Alvarado*) (1989) 207

-24-

Cal.App.3d 464, 477.)  "The focus of the trial court [ ] . . . should be directed primarily to determining whether, *on the facts presented*, the requested amendment would prejudice . . . [a defendant]'s substantial rights." (*Ibid.*, italics added.) Defendant does not present any cogent reason why an increase in an enhancement should have any significance when facing a charge on an underlying offense that carries a penalty of life without possibility of parole.  We therefore do not find any abuse of discretion.

Lodged Doc. 8 at 8-10.

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the fundamental right to be clearly informed of the nature and cause of the charges against him in order to adequately prepare his defense.  *Cole v. State of Ark.*, 333 U.S. 196, 201 (1948). Indeed, "[n]o principle of procedural due process is more clearly established than notice of the specific charge, and a chance to be heard in a trial of the issues raised by that charge, if desired, are among the constitutional rights of every accused in a criminal proceeding in all courts, state or federal."  *Id*. *See also Strickland*, 466 U.S. at 685 ("a fair trial is one in which evidence subject to adversarial testing is presented to an impartial tribunal for resolution of issues defined in advance of the proceeding"); *Jackson v. Virginia*, 443 U.S. 307, 314 (1979) ("a conviction upon a charge not made . . . constitutes a denial of due process").  The notice provision of the Sixth Amendment is incorporated within the Due Process Clause of the Fourteenth Amendment and is applicable to the states.  *Gautt v. Lewis*, 489 F.3d 993, 1003 (9th Cir. 2007).

Under California state law, "[t]he court in which an action is pending may order or permit an amendment of an indictment, accusation or information, or the filing of an amended complaint, for any defect or insufficiency, at any stage of the proceedings " as long as it conforms to the evidence presented at the preliminary hearing and the defendant's substantial rights are not violated.  Cal. Penal Code § 1009; *People v. Graff*, 170 Cal.App.4th 345, 361-62 (2009); *People v. Jones*, 164 Cal.App.3d 1173, 1178 (1985).

In order to demonstrate that a delay in adding a count to a charging document violated due process, Petitioner is required to demonstrate that he suffered actual "non-speculative"

-25-

prejudice from the delay and that "the length of the delay, when balanced against the reason for the delay, must offend those fundamental conceptions of justice which lie at the base of our civil and political institutions." *United States v. Talbot*, 51 F.3d 183, 185-86 (9th Cir. 1995); *United States v. Huntley*, 976 F.2d 1287, 1290 (9th Cir. 1992).  The burden of demonstrating actual prejudice is heavy. *Talbot*, 51 F.3d at 183.  The evidence "must be definite and not speculative," and Petitioner must show "how the loss of a witness and/or evidence is prejudicial to his case." *Id.* (internal quotations omitted).

Petitioner's claim that the trial court's ruling violated his right to due process and a fair trial is without merit.  Petitioner does not argue that the amended information failed to inform him of the nature and the cause of all charges against him.   Nor does he claim that the evidence presented at his preliminary hearing was insufficient to support the challenged firearm enhancements.  In fact, in determining that the amendment would be permitted, the state trial court properly observed:

> I'm going to allow the amendment exercising my discretion to do so. Finding that I can think of no prejudice that the defense will experience as a result of this late amendment as has been pointed out, all the elements of the other allegations are encompassed within this particular new allegation.
>
> And so there has been notice as relates to this case and that charge from that perspective.  From another perspective, it's clear from the preliminary hearing testimony that there was factual notice as it relates to this allegation.  I'm expecting that the discovery provided factual notice as well.
>
> So the Court's going to allow the amendment and subdivision (c) will be changed to (d) of 12022.53, as relates to Counts 1 and 2.

CT at 151.

Moreover, the court granted the prosecution's motion to amend on Tuesday, November 28, 2006.  The prosecution rested its case at the end of the day on Friday, December 1, 2006, and the defense did not begin to present its own case until Tuesday, December 5, 2006. Petitioner thus had a full week's time to prepare any additional defense with regard to the amended

enhancement.  Under these circumstances, it cannot be concluded that he received constitutionally inadequate notice.  *See, e..g., Stephens v. Borg*, 59 F.3d 932, 936 (9th Cir. 1995) (five days notice of prosecution's intent to rely on a felony-murder theory sufficient to prepare a defense); *Morrison v. Estelle*, 981 F.2d 425 (9th Cir. 1992) (evidence presented during trial gave adequate notice of felony-murder theory on which instructions were sought two days before closing argument).  *C.f. Sheppard v. Rees*, 909 F.2d 1234 (9th Cir. 1990) (prosecution ambushed defense with a new theory of culpability after both sides had rested and after jury instructions were settled).  In addition, even assuming that Petitioner was able to demonstrate that the delay rose to the level of a due process violation, he has failed to establish that he suffered any prejudice as a result.  As the state appellate court properly noted, Petitioner's speculation that the pre-trial negotiation process may have taken a different course is insufficient to demonstrate that his claim merits relief.

The state appellate court's rejection of Petitioner's claim is not contrary to or an unreasonable application of clearly established federal law.  Petitioner is not entitled to federal habeas corpus relief on this claim.

## VI.  CONCLUSION

For all of the foregoing reasons, the petition should be denied.  Pursuant to Rule 11 of the Federal Rules Governing Section 2254 Cases, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.  A certificate of appealability may issue only "if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  For the reasons set forth in these findings and recommendations, a substantial showing of the denial of a constitutional right has not been made in this case.

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Petitioner's November 9, 2009 petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 be denied; and

2. The District Court decline to issue a certificate of appealability.

/////

-27-

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time waives the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).  Any reply to the objections shall be filed and served within seven days after service of the objections.

DATED: October 3, 2011

*Charlene H. Sorrentino*

CHARLENE H. SORRENTINO
UNITED STATES MAGISTRATE JUDGE